A89A1375. DEPARTMENT OF TRANSPORTATION v. ADAMS
et al.
(389 SE2d 343)

CARLEY, Chief Judge.

In February of 1985, appellant-condemnor acquired a portion of property owned by appellee-condemnees and paid the amount of estimated just and adequate compensation into the registry of the court. The Condemnees appealed and the issue of just and adequate compensation was tried before a jury. Condemnor appeals from the judgment that was entered on the jury's verdict.

1. On direct examination, the Condemnees' expert testified that, in arriving at his opinion as to value, he had relied upon an April 1986 sale of property as a comparable sale. On cross-examination, the Condemnor sought to question the expert as to why he had relied upon the 1986 sale as comparable when the same property had been sold in May of 1985, only a few months after the relevant date of taking in this action. The trial court sustained the Condemnees' objection to this line of cross-examination and this ruling is enumerated as error.

"It is error requiring the grant of a new trial to deny a party the right to cross-examine witnesses as to vital issues concerning which they have testified upon direct examination." *Harrison v. Regents &c. of Ga.,* 99 Ga. App. 762 (1) (109 SE2d 854) (1959). The Condemnor's cross-examination was clearly calculated to impeach the direct testimony of the Condemnees' expert that the 1986 sale was comparable and thereby to impeach the opinion he had given on direct examination as to the value of the Condemnees' property. It follows that the trial court erred in disallowing the cross-examination. The cross-examination was "for the purpose, not of showing the sale price of property for its probative relationship to the value of the property in dispute but for the purpose of attacking the credibility of the witness. Under the broad rules obtaining in Georgia as to the right to a thorough and sifting cross-examination, including the right to show bias and prejudice on the part of the [opposing party's] appraiser . . . , the testimony would have been admissible for this purpose, since any appraisal should be an honest attempt to arrive at market value. . . ." *Smaha v. State Hwy. Dept.,* 114 Ga. App. 60, 62 (2) (150 SE2d 327) (1966). The value of the land "was to be determined by

considering the value placed on it by the witnesses. The weight and credit of the witnesses' testimony was pertinent and material, in fact, of paramount importance, in deciding the value of the property and the amount of the [C]ondemnees' recovery." *Harrison v. Regents &c. of Ga.*, supra at 766 (1).

The Condemnees urge that the error was harmless because the jury returned a verdict in an amount which was less than the opinion given by their expert. There is authority for this proposition. See *Smaha v. State Hwy. Dept.*, supra at 62-63 (2). Upon reconsideration, however, we now find that the *Smaha* "harmless error" analysis is incorrect. When the error is in failing to allow a witness to be impeached, it is illogical to use his *unimpeached* testimony as the benchmark for determining harm. Had the expert been impeached, the jury would have been authorized to discount the *entirety* of his testimony. Had the expert not been impeached, the jury would have been authorized to consider his testimony along with the other evidence in the case. Accordingly, absent impeachment, the jury in *Smaha* and the present case may well have *accepted* the expert's opinion testimony as to value, but reduced the amount of compensation based upon the *other* evidence which was adduced. If, on the other hand, the jury in *Smaha* and in the present case had entirely discounted the impeached expert's testimony, then his opinion as to value would not have been a factor whatsoever in the verdict. Although the verdict may have been lower than the expert's opinion as to value, it cannot be said with any certainty that the verdict would not have been even lower had he been impeached and his testimony been totally eliminated from consideration. If the verdict could have been even lower had the expert been impeached and his testimony totally discounted, then the error in failing to allow him to be impeached is hardly harmless to the Condemnor.

The determination of value and of whether an expert's opinion as to value should be accepted are questions for the jury. When the determination of value may have been based upon the testimony of an expert whom a party was erroneously precluded from impeaching, an appellate court should not second guess the fact-finding process, but should reverse and remand for a new trial wherein the determination of value is reached by a jury that is properly allowed to resolve the credibility of the witnesses. Accordingly, the *Smaha* "harmless error" analysis is hereby overruled and the present case is reversed for the erroneous failure to allow the Condemnor to impeach the Condemnees' expert.

2. The trial court gave the jury an instruction on the cost to cure. See generally *D'Youville Recreational Assn. v. DeKalb County*, 181 Ga. App. 347, 348 (2) (352 SE2d 181) (1986). The Condemnor enumerates the giving of this charge as error.

The sole contention is that the evidence did not authorize a charge on cost to cure. Our review of the evidence shows that, as against this contention, the charge was not erroneously given. However, insofar as the case must be reversed for the reason discussed in Division 1, we would point out that, in the event a charge on cost to cure should be given in the retrial, it would be preferable to specify that the cost to cure is *not* a separate element of recoverable damages, but is merely a factor to be considered in determining the amount of recoverable consequential damages. "The measure of damages in [this case] is the actual diminution in the market value of the land. . . . In ascertaining whether there has been a diminution in the market value, however, facts which may show that the value has actually decreased, such as that certain changes and expenditures are necessary to bring it to its former condition, although they would *not authorize a recovery of the cost of such changes as independent items of special damages, are admissible as throwing light upon the general question of diminution in market value,* and are always admitted for this purpose. The fact that a change in the grade of a street has left a lot considerably below the level of the street and that the expenditure of a certain amount would be necessary to restore it to a level with the street, would not authorize a recovery of that amount as specific damages, but might very properly be considered as showing that the lot was thereby rendered less salable than before, and that its market value had decreased." (Emphasis supplied.) *City Council of Augusta v. Schrameck*, 96 Ga. 426, 427-28 (1) (23 SE 400) (1895).

Judgment reversed. *Deen, P. J., McMurray, P. J., Banke, P. J., Birdsong, Pope and Benham, JJ., concur. Sognier and Beasley, JJ., concur in judgment only.*

DECIDED NOVEMBER 6, 1989 —
REHEARING DENIED DECEMBER 13, 1989 —

*Reinhart & Whitley, Glenn Whitley,* for appellant.
*Sims, Fleming & Swan, John S. Sims, Jr., W. Edward Meeks, Jr.,* for appellees.